UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JENNIFER CHIAPPONE, | ) |
| | ) |
| Plaintiff, | ) CASE NO. 3:14-cv-00303 |
| | ) |
| v. | ) |
| | ) |
| PREMIER LIMOUSINE, | ) |
| PREMIER LIMOUSINE, LLC D/B/A | ) |
| PREMIER LIMOUSINE, | ) |
| S.D. TRANSPORTATION SERVICES, LLC | ) |
| D/B/A PREMIER LIMOUSINE, STEPHEN | ) |
| DIMARCO, PREMIER BUS LINES, INC., | ) |
| PREMIER BUS, INC. | ) |
| | ) |
| Defendants | ) JULY 1, 2014 |
| | ) |

### AMENDED COMPLAINT

1.    The Plaintiff, Jennifer Chiappone, is a white female, forty (40) years of age, with a residence address at 148 Shore Road, Waterford, Connecticut.

2.    The Defendant, Premier Limousine, is a Connecticut business entity located at 76 Fuller Way, Berlin, Connecticut. The Defendant, Premier Limousine, LLC, is a domestic limited liability company located at 438 Franklin Ave., Hartford, Connecticut which business shares an affiliation with and utilizes the trade name "Premier Limousine." The Defendant, SD Transportation Services, LLC is a domestic limited liability company located at 76 Fuller Way, Berlin, Connecticut which business

{!00991155.DOCX; v.}1

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.  THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

shares an affiliation with "Premier Limousine" and has Stephen DiMarco as a member/agent. The Defendant, Premier Bus Lines, Inc., is a domestic corporation located at 76 Fuller Way, Berlin, Connecticut which business shares an affiliation with "Premier Limousine" and has Stephen DiMarco as Chief Executive Officer. The Defendant, Premier Bus, Inc., is a domestic corporation located at 76 Fuller Way, Berlin, Connecticut which business shares an affiliation with "Premier Limousine" and has Stephen DiMarco as President. These entities, together, share common interest and ownership and should be considered one and the same with respect to the allegations set forth below. Together, these entities shall hereinafter be referred to as "Premier Limousine."

  3. The Defendant, Stephen DiMarco, is the owner/proprietor of Premier Limousine and an officer of the Company(ies) and his acts and/or omissions as described below were either as agent, representative and/or principal of Premier Limousine and/or in his individual capacity.

  4. The Plaintiff was hired by Premier Limousine on or about September 2012 as Vice President of Sales & Marketing and worked continuously in that position until January 2, 2013, when she was fired.

  5. Prior to Ms. Chiappone's date of hire, Mr. DiMarco scheduled an interview with her for a position in the sales department of Premier Limousine.

{!00991155.DOCX; v.}2

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C. THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320 TEL. (860) 442-4416 JURIS NO. 62114

6. Mr. DiMarco arranged the interview to be held at the Mohegan Sun Casino.

7. Leading up to the interview, Mr. DiMarco engaged in communications with Ms. Chiappone wherein he suggested and/or invited sexual favors from her connected with the interview process.

8. Upon arrival at the interview, Mr. DiMarco instructed Ms. Chiappone to meet him at the concierge's lobby.

9. Mr. DiMarco further instructed Ms. Chiappone to proceed with him to a reserved hotel room for the interview.

10. Ms. Chiappone entered the hotel room and she and Mr. DiMarco were the only two occupants therein.

11. Upon information and belief, Mr. DiMarco had arranged for a bottle of liquor to be placed in the room.

12. Ms. Chiappone tried continuously to discuss the sales position and the professional relationship between the parties.

13. Mr. DiMarco steered the parties' discussion toward interpersonal contact and his prior sexual invitations and/or communications and made sexual advances toward Ms. Chiappone.

14. The initial interview did in fact culminate in sexual intercourse between the parties, a result intended by Mr. DiMarco.

15. Ms. Chiappone was made to believe that sexual intercourse was a term and condition of employment.

16. On or after the interview which culminated in sexual intercourse, Ms. Chiappone was notified by Mr. DiMarco that she had been hired by Premier Limousine.

17. Mr. DiMarco instructed Ms. Chiappone to report to the company headquarters in Berlin, Connecticut to meet with Wayne Roberts, Premier Limousine's Chief Executive Officer and President, to complete forms to commence with her employment.

18. Shortly after commencement of her employment with Premier Limousine, Mr. DiMarco arranged for a full expense paid trip to Florida in favor of the Plaintiff and paid for by the business where Ms. Chiappone would meet Mr. DiMarco.

19. Leading up to her arrival in Florida for the trip, Mr. DiMarco engaged in communications with Ms. Chiappone wherein he suggested and/or invited sexual favors from her.

20. Mr. DiMarco arranged for car service to pick up Ms. Chiappone and further arranged for a stay at The "W" hotel in South Beach and instructed Ms. Chiappone to proceed to his hotel room.

21. Upon arrival at The "W", Ms. Chiappone reported to Mr. DiMarco's room and entered where she and Mr. DiMarco were the only two occupants.

{!00991155.DOCX; v.}4

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

22. Mr. DiMarco again steered the communications between the parties away from their professional relationship and to his sexual/romantic advances toward Ms. Chiappone.

23. This hotel meeting culminated in sexual intercourse between the parties, a result intended by Mr. DiMarco.

24. Ms. Chiappone was further made to believe that sexual intercourse was a term and condition of continued employment.

25. In addition to the physical sexual relationship between the parties, Mr. DiMarco consistently engaged in communications with Ms. Chiappone of a sexual and provocative nature, which communications further confirmed the belief that sexual intercourse was a term and condition of continued employment.

26. At some point during Ms. Chiappone's employment with Premier Limousine, the physical sexual relationship between the parties ceased.

27. Mr. DiMarco continued, however, to engage in communications with Ms. Chiappone wherein he suggested and/or invited sexual favors from her.

28. On or about December 2012, and in response to Mr. DiMarco's suggestions and/or invitations, Ms. Chiappone by her words, conduct and/or actions confirmed to Mr. DiMarco that the prior sexual relationship had reached its end.

29. At all times relevant hereto, continued submission to sexual intercourse as a condition of employment was not welcome or acceptable to Ms. Chiappone.

30. Ms. Chiappone was terminated from employment with Premier Limousine shortly after the sexual relationship between the parties reached its end and after Ms. Chiappone's confirmation of the same.

31. Mr. Roberts was tasked with firing the Plaintiff from Premier Limousine.

32. Mr. Roberts met with Ms. Chiappone in-person to carry out the termination and indicated that Mr. DiMarco determined that the Plaintiff could no longer remain employed at Premier Limousine.

33. Ms. Chiappone's submission to and participation in the sexual relationship with Mr. DiMarco defined the employment relationship between her and Premier Limousine.

34. Ms. Chiappone's submission to and participation in sexual intercourse with Mr. DiMarco and the relationship associated therewith was in fact made a term and condition of her continued employment with Premier Limousine.

**FIRST COUNT**: (Violation of CFEPA)

1-34. Paragraphs 1-34 of the Complaint are hereby realleged and incorporated herein as paragraphs 1-34 of this First Count.

35. The Defendants' decision to terminate the Plaintiff was motivated by and/or based primarily upon the sexual relationship between Mr. DiMarco and the Plaintiff and/or the cessation thereof in that:

      a.      The Plaintiff was qualified for the position that she held and performed the duties of her position in a satisfactory manner;

      b.      The Plaintiff was free from discipline during the time of her employment with the Defendants;

      c.      The Plaintiff's performance was never discussed between the parties at any time prior to her termination from employment;

      d.      The Plaintiff's employment was terminated shortly after the cessation of the sexual relationship between her and Mr. DiMarco and her confirmation of the same; and

      e.      Mr. DiMarco consistently conveyed to the Plaintiff that sexual intercourse was a term and condition of continued employment.

36.    The temporal proximity between the cessation of the sexual relationship and Premier Limousine's subsequent decision to terminate the Plaintiff's employment raises an inference of discrimination on the part of the Defendants.

37.    The pretextual justifications for the Defendants' decision to terminate the Plaintiff further support an inference of discrimination on the part of the Defendants.

38.    The Defendants' decision to terminate the Plaintiff, which decision was motivated by or primarily based upon DiMarco's sexual relationship with the Plaintiff, violates the Connecticut Fair Employment Practices Act, as amended, Conn. Gen. Stat. § 46a-60 et seq. ("CFEPA").

39. The Plaintiff has been caused to suffer damages as a result of the Defendants' wrongful discharge in the form of lost wages, fringe benefits, pain and suffering, attorneys' fees and costs.

40. The Plaintiff has satisfied all the procedural and administrative requirements to bring a claim in the superior court in that:

(a). The Plaintiff filed a timely written charge of discrimination with the State of Connecticut Commission on Human Rights and Opportunities (CCHRO) and the Equal Employment Opportunity Commission (EEOC) on or about April 13, 2013; and

(b). The Plaintiff received a release of jurisdiction from the CCHRO pursuant to Section 46a-101 of the Connecticut General Statutes on January 24, 2014; and

(c). The Complaint in this matter was filed within ninety (90) days from the Plaintiff's receipt of the CCHRO's release of jurisdiction and within two (2) years of the date of filing the written charge of discrimination with the CCHRO.

**SECOND COUNT**: (Intentional Infliction of Emotional Distress)

1-34. Paragraphs 1-34 of the Complaint are hereby realleged and incorporated herein as paragraphs 1-34 of this Second Count.

35. At the time of Mr. DiMarco's offer to hire, he knew and/or should have known of the Plaintiff's financial vulnerability as a single mother and her need for consistent wages and/or income to support her children.

36. In offering the Plaintiff employment, Mr. DiMarco used the position with Premier Limousine as a means to induce, persuade and/or influence the Plaintiff to engage in a sexual relationship with him.

37. Mr. DiMarco promised financial incentives, compensation bonuses and an executive position to the Plaintiff as further inducement for the Plaintiff to engage in a sexual relationship with him.

38. Mr. DiMarco's actions to induce, persuade and/or influence the Plaintiff did in fact culminate in a sexual relationship between the parties.

39. Upon the full execution of his plan/scheme to engage in a sexual relationship with the Plaintiff for his gratification, Mr. DiMarco summarily terminated her employment with Premier Limousine.

40. Mr. DiMarco, either as owner, agent, supervisor and/or representative of Premier Limousine, in the course of and within the scope of his employment with the company, and/or in his individual capacity, intended to inflict emotional distress upon the Plaintiff and/or knew or should have known that emotional distress would result when he executed a plan to induce the Plaintiff into a sexual relationship with him by making offers and/or promises which he never intended to fulfill.

{!00991155.DOCX; v.}9

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

41. The Plaintiff has been caused to suffer extreme emotional distress as a result of Mr. DiMarco's extreme and outrageous conduct.

**THIRD COUNT**: (Fraud)

1-41. Paragraphs 1-41 of the Second Count are hereby realleged and incorporated herein as paragraphs 1-41 of this Third Count.

42. Mr. DiMarco's offer to hire the Plaintiff for the position of Vice President of Sales and Marketing with Premier Limousine was illusory in that Mr. DiMarco, at the time he made such offer, never intended to employ the Plaintiff in that role on a permanent basis.

43. Mr. DiMarco made the offer to induce, persuade and/or influence the Plaintiff to engage in a sexual relationship with him.

44. The Plaintiff did in fact act upon the illusory offer and position of employment in that she engaged in a sexual relationship with Mr. DiMarco assuming that sexual intercourse was required for the job.

45. The Plaintiff has been caused to suffer extreme emotional distress as a result of Mr. DiMarco's conduct and has further lost the opportunity for genuine employment starting from the fraud perpetrated by Mr. DiMarco in September 2012.

**FOURTH COUNT**: (Negligent Infliction of Emotional Distress)

1-41. Paragraphs 1-41 of the Second Count are hereby realleged and incorporated herein as paragraphs 1-41 of this Fourth Count.

{!00991155.DOCX; v.}10

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.  THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

42. Mr. DiMarco's acts and/or omissions as set forth above were extreme and outrageous and created an unreasonable risk of causing the Plaintiff emotional distress in that:

    (a). He failed to create, institute and/or abide by policies related to sexual harassment;

    (b). He should have known of the impact of the sexual relationship, the continuation thereof and the severely negative impact it would have on his decision-making with respect to the Plaintiff's employment;

    (c). He failed to address the sexual relationship between himself and the Plaintiff prior to and during the process which resulted in the termination of her employment; and/or

    (d). He failed to appreciate the significant emotional burden and damage which could be caused by the execution of his plan/scheme to induce the Plaintiff into a sexual relationship by virtue of his illusory promise of employment.

43. The Plaintiff's emotional distress was foreseeable as Mr. DiMarco was aware of her financial vulnerability as a single mother and her need for consistent wages and/or income to support her children and the impact of instituting a sexual relationship based upon illusory and/or deceptive promises of employment.

44. The Plaintiff has been caused to suffer extreme emotional distress as a result of Mr. DiMarco's conduct.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

WHEREFORE, the Plaintiff prays for relief as follows:

1. Compensatory Damages (loss of wages; back and front pay; fringe benefits);

2. Emotional Distress Damages;

3. Punitive Damages;

4. Costs; and

5. Such other relief as the Court deems equitable.

THE PLAINTIFF

By: _____
Bryan P. Fiengo
Suisman, Shapiro, Wool, Brennan,
Gray & Greenberg, P.C.
2 Union Plaza, Suite 200, P.O. Box 1591
New London, CT 06320
Fed. Bar No. ct27346
Tel. (860) 442-4416
Fax (860) 442-0495
Email: bfiengo@sswbgg.com

{!00991155.DOCX; v.}12

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL. (860) 442-4416   JURIS NO. 62114

## CERTIFICATION

This is to certify that on the 1st day of July, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Kevin James Greene, Esq.
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Federal Bar No.: ct16742
Phone 860-297-4670
Fax: 860-548-0006
Email: Greene@halloransage.com

_____
Bryan P. Fiengo
Commissioner of the Superior Court

{!00991155.DOCX; v.}13